**WASHINGTON PENSION UNION,**
Petitioner,

v.

**SUBVERSIVE ACTIVITIES CONTROL BOARD, Respondent.**

No. 15197.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 10, 1962.

Decided June 6, 1963.

Mr. David Rein, Washington, D. C., argued the motion to dismiss and vacate for petitioner.

Mr. Robert L. Keuch, Attorney, Department of Justice, argued in opposition to the motion for respondent. On respondent's answer were Mr. Frank R. Hunter, Jr., General Counsel, Subversive Activities Control Board, and Mr. Kevin T. Maroney, Attorney, Department of Justice.

Before BAZELON, Chief Judge, PRETTY-MAN, Senior Circuit Judge, and DANA-HER, Circuit Judge.

PRETTYMAN, Senior Circuit Judge.

This is another of the cases referred to in Labor Youth League v. Subversive Activities Control Board,[1] decided April 25, 1963. The Washington Pension Union was organized in 1937 as a non-profit benevolent corporation under the laws of the State of Washington. Its declared purpose was the promotion of pensions for the old and disabled. It grew by

1947 to a membership of some five or six thousand persons with some eighty locals. Then it diminished by 1961 to four locals and between two and three hundred members. Meantime, in December, 1954, the Attorney General petitioned the Subversive Activities Control Board to order the Union to register as a Communist front under Section 7 of the Subversive Activities Control Act of 1950.[2] Hearings were had, and in April, 1959, the Board issued a registration order. The Union, on June 12, 1959, petitioned this court to review the Board's order.

While the petition for review was pending here, held in abeyance pending the final disposition of the Communist Party case,[3] the Union, on November 24, 1961, moved the court to dismiss the petition and vacate the order for mootness. In its motion the Union, by its counsel, said it had been dissolved in August, 1961, and it attached exhibits in support. The court remanded the case to the Board for findings in respect to the alleged dissolution. Hearings were had, witnesses heard, and exhibits received. The Board issued a report on remand, and that report is now before us.

As the Board found, the facts as to the actions taken to dissolve the Union are not disputed. In early 1961 the officers discussed the declining membership and income. At a meeting of the directors in July, dissolution was discussed. The president had a conference with the Supervisor of Corporations in the office of the Secretary of State. This official advised him that the State would accept a petition signed by a majority of the directors. On August 12th, at a well-attended meeting, the directors present unanimously voted to dissolve, and a majority of the full board signed a certificate of dissolution. This was approved as to form and filed by the Supervisor of Corporations. The Secretary of State issued on August 17th a certificate that

1. 115 U.S.App.D.C. 159, 322 F.2d 364.

2. 64 Stat. 993, as amended, 50 U.S.C. § 786.

3. Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961).

a "Surrender of Corporate Powers" of the Union had been filed in his office that day. At the hearing on remand before the Board, the Washington State Supervisor of Corporations was presented as a witness and testified that the procedure followed in this case has been the general practice for many years, because of the difficulties of obtaining a dissolution of non-profit corporations, and she expressed as an interpretation of her office, "Absolutely, as of August 17, 1961 it was dissolved." The Board also found that according to unrebutted and undenied testimony the central office of the Union was dismantled, the furniture either sold or given away, and a statement mailed to several hundred people notifying them of the dissolution. So there can be no doubt of the fact that the Union as a corporation has been dissolved.

The question, then, is what disposition should be made of the proceeding at bar. Since the corporation which was the respondent before the Board brought the case to the court, and since it now establishes that after it became a party-petitioner here it voluntarily terminated its corporate existence and is no longer in being, we think the proper disposition of the matter is to dismiss the petition for review.

The Board, in its report on remand, discussed the pre-existing duty to register as a bar to dissolution, and the question whether the Union may be deemed to be still in existence in view of the fact that groups of its members continue to meet with each other,[4] and the question whether the defunct corporation might at some time be reactivated, and the question of the effect of the existence of a committee of four members formed to collect material relating to the Union for deposit in the library of the University of Washington. But in view of our disposition of the case we deem discussion of these several questions unnecessary. The petition for review will be dismissed for lack of a party-petitioner. The course followed by us in this matter is in principle and in substance, so far as the dissimilar factual situations permit, the course followed by the Supreme Court in Walling v. James V. Reuter Co.[5]

We note that the status of a disbanded unincorporated association presents problems totally different from those presented by a dissolved corporation. Reactivation of the former may be simple and informal; revival of the latter is possible only under legislative authority and strict formality. The former may be dormant; the latter is dead. And in this connection we also note that the application of this statute is to organizations named in the proceedings. The Attorney General's petition names an organization. The Board holds a hearing concerning that named organization. It makes findings as to the direction, control and objectives of that named organization. It orders that named organization to register, or the officers or members of that named organization to register. The sanctions apply to the members of that organization. The statute is not applied like a spray to all persons who hold certain ideas or who may become tainted by brushing against ideas or people. Whether the Board could order a named organization or its successor or successors in interest to register is not now before us; so far as we are advised it has never been attempted. The foregoing is by way of explanation of the somewhat different dispositions we make of Labor Youth League, supra, and this case.

Petition dismissed.

4. "[O]n a friendly, social basis, that's all," the witness said.

5. 321 U.S. 671, 64 S.Ct. 826, 88 L.Ed. 1001 (1944).